**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TULSA FOODS, INC. d/b/a ) | |
| SUPER H FOODS, SKIATOOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 06-CV-279-TCK-PJC |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Plaintiff Tulsa Foods, Inc. d/b/a Super H Foods, Skiatook's ("Super H") Motion to Remand Action to State Court (Doc. 24). For the reasons explained below, the motion is granted.

**I.   Procedural History[1]**

On June 13, 2005, Super H, a grocery store in Skiatook, Oklahoma, filed suit in the District Court for Osage County, asserting claims for trespass and conversion of proprietary information and requesting monetary and injunctive relief.[2] Super H alleges that Defendant Wal-Mart Stores, Inc. ("Wal-Mart") sent employees into Super H's store to surreptitiously record proprietary pricing information on various occasions. On June 1, 2005, a Wal-Mart employee was caught by the Super H manager using a scanner to record Super H's prices. The Skiatook Police Department was called and took possession of the scanner from the Wal-Mart employee. Super H moved the court for

---

[1] The Court sets forth a detailed procedural history because the prior removal proceedings in this Court and the procedural posture of the case in the state-court proceedings are important to the Court's analysis.

[2] Since the time of filing suit, Super H abandoned its claim for conversion, and the only claim remaining is trespass.

injunctive relief to prevent the Skiatook Police Department from returning the scanner to Wal-Mart, which the court granted. (Not. of Removal, Ex. 4.)[3] At the time the lawsuit was filed, Super H and Wal-Mart operated next door to each other. According to Super H's counsel, the purpose of the suit was to prevent Wal-Mart from trespassing. (*See* 5/17/06 Tr., Plf.'s Mot. to Remand, Ex. B at 21.) At some point after the case was filed, the Wal-Mart next to Super H closed, and a Wal-Mart "supercenter" opened at a different location in Skiatook. On or around December 2006, after the opening of the Wal-Mart supercenter, Super H closed. (*See id.* at 20; Not. of Removal 5.)

On August 10, 2005, Wal-Mart filed a Notice of Removal in Case No. 05-CV-460-TCK-PJC. On September 9, 2005, Super H filed a motion to remand, alleging that Super H had failed to establish the requisite amount in controversy. On October 31, 2005, counsel for Super H sent counsel for Wal-Mart an offer of compromise letter (the "Offer Letter") offering to settle the case for an amount in excess of $75,000. On November 7, 2005, before the Court ruled on the Motion to Remand, Wal-Mart filed an Amended Notice of Removal, citing statements in the Offer Letter as proof of the jurisdictional amount. The Court denied the first motion to remand as moot, recognizing that, prior to remand, a removing party may cure faulty allegations in a notice of removal by filing an amended notice of removal. *See Maggio Enter. v. Hartford Cas. Ins. Co.*, 132 F. Supp. 2d 930 (D. Colo. 2001). The Court ordered Super H to file a motion to remand related to the Amended Notice of Removal if it so desired. On December 7, 2005, Super H did so.

On December 15, 2005, Super H propounded its first discovery requests to Wal-Mart, which requested, *inter alia*, Wal-Mart's national policies and procedure related to scanning product

---

[3] The Skiatook Police Department was originally a Defendant in the lawsuit but was dismissed prior to removal.

information and any similar complaints against Wal-Mart stores nationwide ("Super H's Discovery Requests"). (Not. of Removal, Ex. 51.) On February 2, 2006, Wal-Mart filed a Motion for Summary Judgment or, alternatively, a motion for protective order preventing Super H from obtaining discovery "beyond [] that [which] directly concern[s] the Wal-Mart store in Skiatook, Oklahoma" ("Motion for Summary Judgment or Protective Order"). (*See* Not. of Removal, Ex. S-22.)

Prior to ruling on the Motion for Summary Judgment or Protective Order, this Court granted Super H's motion to remand, finding the Offer Letter failed to establish that the amount in controversy exceeded $75,000. (*See* 2/15/06 Order, Case No. 05-CV-460-TCK-PJC, at 6.) Specifically, the Court found that the Offer Letter was merely an offer of compromise that did not provide any type of reasonable estimate of the value of the claims asserted. The Court reasoned:

> The Court concludes that this type of offer of compromise necessarily takes into account several factors other than the actual value of the claims asserted. For example, it includes consideration for the avoidance of litigation and the avoidance of a public trial. In particular, Super H in this case is careful to avoid any equivocal statements regarding the value of the claims and to make clear that the amount of the offer of compromise takes into account several litigation "risk" factors. The letter simply does not purport to analyze the damages in light of underlying facts but instead concedes that the $269,600 amount proposed is a somewhat arbitrary number between a possible low value of the case (which is below the jurisdictional amount) and a possible high value of the case (which is above the jurisdictional amount). Such a letter, in the Court's view, is insufficient to constitute "an economic analysis of the alleged damages supported by the underlying facts," as is required by *Laughlin*. The letter is therefore distinguishable from the pre-suit demand letter at issue in *Archer*, which contained a statement of the "underlying facts, with the amounts sought for each claim, by category." *Archer*, 271 F. Supp. 2d at 1323.

(*Id.* (footnote omitted).) Thus, the case was remanded back to Osage County on February 15, 2006.

On February 17, 2006, Wal-Mart sent interrogatories to Super H, one of which inquired as to the amount in controversy. (Not. of Removal, Ex. 46.) On March 29, 2006, Super H responded

3

by stating that "the information known or readily obtainable by Plaintiff is insufficient to enable them [sic] to state a total damages amount, at this time because Defendant has failed to produce requested documents" and that "Plaintiff will supplement their [sic] response as discovery progresses." (Not. of Removal, Ex. 47.) On April 3, 2006, Wal-Mart filed a motion to compel these interrogatory answers. (Not. of Removal, Ex. 26.)[4]

On March 29, 2006, Super H requested an extension for responding to Wal-Mart's Motion for Summary Judgment or Protective Order, arguing that such motion was premature due to outstanding discovery, and also moved for a scheduling order. (Not. of Removal, Ex. 23.) On April 17, 2006, the Honorable M. John Kane, IV conducted a scheduling conference. Judge Kane did not rule on Wal-Mart's Motion for Summary Judgment or Protective Order or on Super H's motion to extend its time for responding to Wal-Mart's Motion for Summary Judgment. Instead, the court directed Super H to file a motion to compel responses to Super H's Discovery Requests by May 1, 2006. According to Wal-Mart, this was so the court could determine if the evidentiary materials requested were necessary in order for Super H to respond to Wal-Mart's Motion for Summary Judgment. (*See* Not. of Removal, Ex. 35 at 1.) On May 1, 2006, Super H filed its Motion to Compel ("Super H's Motion to Compel"), and Wal-Mart responded by arguing that the nation-wide discovery requests were merely a "fishing expedition to discover documents that bear no conceivable relationship to the Plaintiff's claims." (*See id.* at 2.)

---

[4] In a similar attempt to discover the amount in controversy, on March 31, 2006, Wal-Mart sent Super H requests for admission, which asked Super H to admit that the amount in controversy exceeded $75,000. (Not. of Removal, Ex. 49.) On May 1, 2006, Plaintiff responded to these requests by stating that "Defendant has knowingly and willfully declined to provide discovery necessary for Plaintiff to determine its damages." (Not. of Removal, Ex. 50.)

4

On May 17, 2006, Judge Kane held a hearing on Super H's Motion to Compel. At the outset of the hearing, Judge Kane criticized Wal-Mart's discovery tactics:

> And, out of one side of Defendant's mouth, Defendant is saying we shouldn't be treated differently because we're big, but on the other side of Wal-Mart's mouth, they're saying, we shouldn't have to respond to discovery because we're big. Mr. Pinkerton indicates that he doesn't feel like his motion can be fairly addressed without incorporating the law and the facts in the decisions, and yet, Wal-Mart is orchestrating this to prevent the Plaintiff from assuring itself that it has all the facts that it needs.

(*See* 5/17/06 Tr. at 2.) Judge Kane overruled Wal-Mart's objections to Super H's Motion to Compel and ordered Wal-Mart to respond to Super H's Discovery Requests. (*Id.* at 2.)

At the conclusion of this hearing, Wal-Mart brought up its own discovery requesting that Super H admit that the amount in controversy exceeds $75,000. (*See* Not. of Removal Exs. 46 and 49.) Wal-Mart argued, as it does before this Court, that the closing of the Super H store, which occurred in December 2005, was clearly at issue in the lawsuit and that Super H was in possession of all information it needed to admit or deny whether the amount in controversy exceeded $75,000. As it does before this Court, Super H claimed it was without sufficient information to respond to such requests without the discovery Judge Kane had just ordered. (*See* 5/17/06 Tr. at 20-22.) Super H's counsel reminded Judge Kane that the original suit was filed only to stop the trespass, and that he was not sure Super H could "connect the dots" to particularized damages for the store closing without the requested discovery. (*See id.* at 20.) Wal-Mart argued that Super H was "artfully" avoiding stating an amount in controversy to avoid removal. (*See id.* at 17-18.) Judge Kane took the matter under advisement, aware that the one-year time limit for removal under 28 U.S.C. § 1446(b) was set to expire on June 1, 2006, approximately two weeks following the hearing. (*See*

5

*id.* at 22.) The next day, on May 18, 2006, Wal-Mart filed a motion to compel responses to its requests for admission regarding the amount in controversy.

In a prompt and well-reasoned Order dated May 22, 2006, Judge Kane ruled:

> In effect, what Defendant suggests . . . is that Plaintiff is being disingenuous in its statement that it cannot respond to [discovery requests] until Defendant surrenders discovery previously Ordered . . . . Until such time as the Court is advised that the discovery has been delivered to Plaintiff, and until such time as the Court is allowed to convene a hearing and receive evidence and argument upon the issue, it is premature to infer an improper motive to Plaintiff's protests. While the Court is sympathetic to the Defendant's suggestion that the discovery sought would be helpful in the event Defendant seeks re-removal to Federal Court, *the Court also notes that the matter has been remanded to this Court for three (3) months, and the pending Motion to Compel has only been on file for a scant four (4) days.*

(Reply Br. in Support of Mot. to Remand, Ex. C, at 2 (emphasis added).) Thus, Judge Kane ordered Wal-Mart to respond to Super H's Discovery Requests prior to requiring Super H to respond to Wal-Mart's Motion for Summary Judgment and prior to requiring Super H to respond to discovery requests regarding the amount in controversy.

On May 30, 2006, after this adverse ruling by Judge Kane and one day prior to the one-year outer limit for removal, Wal-Mart filed a Notice of Removal with this Court, which is in effect Wal-Mart's third attempt at removal. Super H again moved to remand on grounds that Wal-Mart had failed to establish the amount in controversy exceeds $75,000.

**II.     Standards for Removal and Establishing Amount in Controversy**

A civil action is removable only if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *See Basso v. Utah Power & Light, Co.*, 495 F.2d 906 (10th Cir. 1974). A defendant's right to remove and a plaintiff's right to choose his forum are not on equal footing, and where plaintiff and defendant clash about jurisdiction, uncertainties are

resolved in favor of remand. *See Barber v. Albertson's, Inc.*, 935 F. Supp. 1188, 1189 (N.D. Okla. 1996). The Court strictly construes the removal statute and must resolve all doubts against removal. *See Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). Removal in this case is based on diversity jurisdiction. The parties do not dispute the existence of diversity of citizenship but dispute that the amount in controversy exceeds the required amount.

Under Tenth Circuit law regarding the amount in controversy, "[t]he burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000.00].'" *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). "Thus, where the face of the petition does not affirmatively establish that the amount in controversy exceeds $75,000, the rationale of *Laughlin* contemplates that the removing party will undertake to perform an economic analysis of the alleged damages supported by the underlying facts." *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003). The defendant's burden is to prove the existence of the amount in controversy by at least a preponderance of the evidence. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). Consistent with the *Laughlin* standard, the local rules of this Court provide:

> LCvR 81.3    Removal-Jurisdictional Amount
>
> (a) Where one or more defendants seek to remove an action from state court based upon diversity of citizenship, and where the face of the state court petition does not contain an express damages clause as to at least one claim asserted by at least one plaintiff, in an amount exceeding $75,000 (exclusive of interest and costs), the notice of removal shall include either:
>
> 1. A particularized statement of facts upon which the jurisdictional amount is based set forth in accordance with applicable law; or

  2. With respect to at least one plaintiff in the state court action, either a response by such plaintiff to an interrogatory or interrogatories as to the amount in controversy or an admission by such plaintiff in response to a request for admission. In either case, that plaintiff's response must state unequivocally that the damages actually sought by the plaintiff exceed $75,000.

In this case, Super H's Petition seeks damages for the trespass claim "in an amount exceeding $10,000, but less than $75,000." (Not. of Removal, Ex. 2 at ¶10.) Thus, the face of the Petition does not affirmatively establish that the amount in controversy exceeds $75,000 and in fact expressly denies it. In the state court proceedings, Judge Kane did not order Super H to respond to Wal-Mart's discovery requests regarding damages prior to removal, and Super H therefore has not stated that it seeks damages in excess of $75,000 in a discovery response, as contemplated by LCvR 81.3(a)(2). Accordingly, Wal-Mart must follow the dictates of LCvR 81.3(a)(1), which requires it to show a particularized statement of facts upon which the amount is based set forth in accordance with applicable law.[5]

### III. Applicable Oklahoma Law on Trespass

The only claim remaining in the case is one for trespass. As to the trespass claim, the Petition alleges that Wal-Mart employees wrongfully entered its property and recorded Super H's "proprietary pricing information" and "confidential price files." (Not. of Removal, Ex. 2 ¶¶ 6-7.) Under Oklahoma law, a trespasser is "one who enters upon property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duty to owner or person in charge or on any business of such person, but merely for his own

---

[5] In this district, a plaintiff's refusal to respond to discovery requests regarding the amount in controversy is not a sufficient basis for removal. *See Barber*, 935 F. Supp. at 1191; *Johnson v. Wal-Mart Stores, Inc.*, 953 F. Supp. 351, 353 (N.D. Okla. 1995). Instead, a removing defendant must still establish the amount in controversy by a preponderance of the evidence.

purposes, pleasure, or convenience, or out of curiosity." *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998). "[T]he measure of damages for trespass is the difference in the value of the land before the trespass and the value after the trespass." *Gipson v. Sprint Comm. Co.*, 81 P.3d 65, 73 (Okla. Ct. App. 2003). Wal-Mart must establish, by a preponderance of the evidence, that the value of the trespass claim is greater than $75,000. *See Archer*, 271 F. Supp. 2d at 1323 ("The value of the claim . . . reflects the potential damages a judge or jury could award if the claim is valid, the Defendant liable, and the injury compensable.").

## IV. Analysis

### A. Sufficiency of Notice of Removal[6]

Wal-Mart's Notice of Removal contains the following two facts to establish the amount in controversy: (1) Super H's statement in the October 31, 2005 Offer Letter that "Super H was profiting in net income before taxes in the $10,000-$12,000 per week range, resulting in an approximate annual profit of $500,000" (Not. of Removal, Ex. 41); and (2) a statement in Super H's Motion to Compel, which was filed in state court on May 1, 2006, that "[a]ll of these requests go to the heart of Plaintiff's claim that [Wal-Mart] utilized a scanning device without the permission of Plaintiff and obtained proprietary information *resulting in the closing of the Super H store*." (Notice of Removal, Sealed Exhibits, Ex. B at 4 (emphasis added).) Wal-Mart argues that, taken together, these two statements by Super H are sufficient to meet its burden of establishing that the amount in controversy exceeds $75,000, in light of the measure of damages for a trespass claim under Oklahoma law. Wal-Mart argues that the amounts of net profits set forth by Super H in the Offer Letter have new importance in light of the statement in the motion to compel because Super

---

[6] The Notice of Removal was supported by a four-volume evidentiary record consisting of hundreds of sealed and unsealed exhibits, which the Court has reviewed in its entirety.

H has, for the first time, stated unequivocally that it seeks damages on its trespass claim for the closing of the store. *See* 28 U.S.C. § 1446(b) (providing that defendant has thirty days from receiving an "amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable").[7] Super H argues that nothing has changed since this Court's first remand order, that it needs the discovery ordered by Judge Kane in order to place even a potential value on the trespass claim, and that Wal-Mart has still failed to establish, by a preponderance of the evidence, that Super H seeks damages in excess of $75,000.

As an initial matter, the Court observes that the Petition specifically seeks damages in an amount *less than* $75,000 for the trespass claim. (Pet. ¶ 10, Not. of Removal Ex. 2.)  Where a plaintiff has expressly pled less than the jurisdictional amount, the defendant's burden of proof upon removal is "a heavy one" because the court should "assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Further, upon review of its first remand Order and the Offer Letter, the Court remains convinced that the statements in the Offer Letter did not provide a "reasonable estimate" of Super H's claim but were instead an offer of compromise consisting of legal posturing and hedging language that is insufficient to constitute a *Laughlin* economic analysis. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) (stating that a "settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *Vermande v. Hyundai Motor Am., Inc.,* 352 F. Supp. 2d 195, 203 (D. Conn. 2004) (stating that court should view settlement letters in context of case as a whole and "should be alert

---

[7] Notably, Wal-Mart did not re-remove the case immediately upon receiving the motion to compel that it claims triggered its right to re-remove the case. Wal-Mart removed only after receiving the adverse discovery ruling in state court.

to the fact that settlement offers can often be wildly unrealistic and constitute mere puffery or posturing rather than a fair appraisal of a party's damages").[8]

The question is whether the statement in the motion to compel breathes new life into Wal-Mart's removal. Read in context of all evidence before the Court, including the entire motion to compel and counsel's arguments to Judge Kane at the hearing on the motion to compel, the Court concludes that the one-sentence argument in the motion to compel is unsupported by and contrary to other statements in the record. After reading the entire state-court record, it is clear to the Court that Super H still does not know whether damages for the store closing are potential damages in this lawsuit - a lawsuit which was originally filed primarily to stop the trespass and before the Super H store had even closed. The reason the amount in controversy is still unknown is because Super H does not have the requisite discovery from Wal-Mart to determine if it will seek such damages.[9]

The Court's conclusion that the argument in the motion to compel is inconclusive is consistent with Judge Kane's ruling at the state-court level. Judge Kane ordered that Super H did not have to respond to the requests for admission regarding the amount in controversy until after Wal-Mart's discovery was received. It is also consistent with Super H's arguments at the hearing

---

[8] Although the Offer Letter raised the theory that the trespass may have caused the store closing, the letter couched the new theory with uncertainty of the strongest kind. (*See* Not. of Removal, Ex. 41. ("Mr. Davis [damages expert] . . . cannot assist in a damage calculation at this time without further discovery . . . .I acknowledge that my challenge will be to connect a damage figure to the trespass . . . .).) The Court did not find sufficient proof in the Offer Letter that Super H actually sought damages for the store closing at that time; instead, the Court viewed Super H as merely "posturing" about a theory that was not alleged in the Petition and that was not even part of the lawsuit in order to induce a larger settlement before engaging in expensive discovery on the issue.

[9] Wal-Mart has still has not provided this discovery because it immediately removed to this Court upon receiving the adverse discovery ruling.

on the motion to compel before Judge Kane. (*See* 5/17/06 Tr., Plf.'s Mot. to Remand, Ex. B, at 20-21 ("There's now [sic] way, with you just granting this motion [to compel], that I can do the discovery to put a damage model together. Because, I don't know what they know. I don't, you know, know, at the time we filed the case, it was really just to get them to stop them from trespassing. And, then this happened. So, I don't have enough information at all, to put a damage model together.").) It is also consistent with Super H's arguments presented in support of remand, wherein Super H stated that the discovery ordered by Judge Kane is necessary "to permit Plaintiff to determine whether there is a *tenable connection* between the trespass complained of in this lawsuit and any damages to Plaintiff." (Reply in Support of Mot. to Remand at 4 (emphasis added).) Super H's position, notwithstanding the statement in the motion to compel, has been that it is does not know if and to what extent damages for the store closing are part of its case. If Wal-Mart had provided the requisite discovery first requested in December 2005, Super H would have been required to answer the damages question prior to the expiration of the one-year time limit for removal. When Wal-Mart does provide the discovery, Super H will be compelled to answer the discovery requests.[10] Until that time, the Court believes it is premature to conclude, by a preponderance of the evidence, that the lost-profits estimates in the Offer Letter are actually at issue in this lawsuit. *See Burns*, 31 F.3d 1092 (where plaintiff pled less than the jurisdictional amount but stated that the amount may change "upon a worsening health condition of the plaintiff or perhaps greater punitive damages would be justifiable *if facts discovered during the litigation* showed a more sinister or oppressive character," defendant had not met its burden of establishing jurisdictional amount) (emphasis added). This case

---

[10] The fact that this will occur after the one-year time limit for removal is unfortunate. However, as noted by Judge Kane, Wal-Mart is not without responsibility for this delay.

was a simple state-court action filed to stop a trespass. Whether the case has morphed into something larger remains to be seen through discovery that Wal-Mart has refused to provide.

Wal-Mart also cites Super H's punitive damages claim as support for removal. The existence of a punitive damage claim is generally insufficient, in this district, to establish the amount in controversy. *See Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1200 (N.D. Okla. 2004). Indeed, "to hold otherwise would require this Court to conclude that every civil action asserting a punitive damages claim under Oklahoma law necessarily satisfies the amount in controversy requirement simply because the maximum potential recovery exceeds $75,000." *DHNP, LLC v. Hartford Casualty Ins. Co.*, No. 06-CV-632-JHP, 2007 WL 120726, at * 3 (N.D. Okla. 2007). Instead, a defendant must show "underlying facts tending to show that such an award would be justified or likely." *Id.* Wal-Mart has cited the testimony of Super H store manager, Greg McNeil, who testified that his "opinion" was that Wal-Mart acted with malice to harm Super H. (*See* Not. of Removal, Ex. 42 at 190-92.) However, Super H's own opinion on the matter amounts to nothing more than a conclusory and self-serving statement and does not convince the court that a punitive damages award is either "justified or likely" under the circumstances presented. *See DHNP*, 2007 WL 120726, at * 3.[11]

---

[11] Wal-Mart has forcefully argued in its Motion for Summary Judgment or Protective Order that it did not act with any malice or intent to harm Super H and that price scanning is a routine practice by competitors. (Not. of Removal, Ex. S-22.)

13

### B. Wal-Mart's Cited Case Law Regarding Manipulative Litigation Tactics Is Unpersuasive

Wal-Mart devoted almost its entire response brief to accusing Super H of bad-faith litigation conduct in attempting to avoid removal. Wal-Mart cited two cases, *De Aguilar v. Boeing Company*, 47 F.3d 1404 (5th Cir. 1995) and *Schwenk v. Cobra Manufacturing Company*, 322 F. Supp. 2d 676 (E.D. Va. 2004). In both cases, the courts made a specific finding of bad-faith litigation tactics by the plaintiff in attempting to avoid removal. *See De Aguilar*, 47 F.3d at 1408 ("As a functional matter, plaintiffs are attempting to avoid federal jurisdiction"); *Schwenk*, 322 F. Supp. 2d at 678 (where plaintiff's counsel admitted his intention to increase the amount of damages claimed after remand, court held that plaintiff's counsel was "not proceeding in good faith" and that his "attempt to manipulate the system constitutes bad faith"). However, like Judge Kane, this Court is not convinced, based on the record before it, that Super H has engaged in any improper conduct during this litigation or that Super H is trying to manipulate the system and avoid federal jurisdiction. Instead, Super H is trying to discover a "reasonable estimate" of damage flowing from its trespass claim. In order to do so, Super H alleges it needs information from Wal-Mart regarding Wal-Mart's national policies on price scanning, which Wal-Mart vehemently did not want to provide. Wal-Mart lost this discovery battle in state court and then immediately removed. Under these circumstances, the Court is unwilling to find that Super H has engaged in bad faith tactics. If this litigation involves gamesmanship, litigation tactics, or attempts at "hiding the ball," such tactics are, at the very least, being engaged in by both parties. A district court within the Tenth Circuit has, in fact, expressly held *Schwenk* inapplicable where a plaintiff claimed to need additional discovery from a defendant in order to provide a reasonable estimate of its damages. *See CST Industries, Inc. v. Randall*, No. 04-2334-JWL, 2004 WL 2282906, at * 3  (D. Kan. Oct. 6, 2004) (holding that no

inference of improper motive to stay in state court can be drawn where plaintiff's reason for refusing to calculate its damages is a lack of information which plaintiff alleges is caused by defendant). The Court does not find that the "bad faith" cases cited by Wal-Mart support the retention of jurisdiction in this case.[12]

### C. Summary of Unique Circumstances Counseling Against Remand

The case was filed in state court and was in all ways a case that belonged in state court. Subsequent events occurred, *i.e.*, the closing of the store, but it is still not clear to the Court by a preponderance of the evidence that the potential value of the trespass claim is in excess of the jurisdictional amount. Super H was, in the majority of its statements to this Court and to Judge Kane, at best equivocal as to whether this element of damages is actually at issue in the case and claimed that it needed additional discovery to so determine. This discovery has been ordered by the state court but not yet provided. Judge Kane did not order Super H to respond to Wal-Mart's request for admission of the amount in controversy until such time as Wal-Mart's discovery had been received, even after considering all the same arguments Wal-Mart has presented in this case regarding Super H's attempts to avoid removal. In addition, Judge Kane was well aware of the expiration of the time limit for removal. Under these unique circumstances, in light of the presumption against remand, and in light of the Court's belief that Super H has not engaged in bad-

---

[12] To the extent Wal-Mart cites *De Aguilar* and *Schwenk* to support its position that the jurisdictional amount is met, the Court also finds the cases distinguishable. In *De Aguilar*, the court held that it was "facially apparent" from the complaint that the damages exceeded $50,000 due to the nature of the claims asserted, which were wrongful deaths after an airline crash. *De Aguilar*, 47 F.3d at 1412. In this case, it is not facially apparent from the Petition or the removal record that the amount in controversy exceeds the jurisdictional amount. In *Schwenk*, the plaintiff's counsel specifically admitted to the court that, immediately upon remand, he intended to increase his damages demand to $600,000. Understandably, the court was incensed and denied the motion to remand. No such facts are present here.

faith tactics to avoid removal, the Court finds Wal-Mart has not met its burden of establishing the jurisdictional amount. The Court anticipates that this holding will be limited to its facts.

### G. Attorneys' Fees

The Court does not conclude that Wal-Mart's argument in its Notice of Removal was in any way frivolous. To the contrary, this Notice of Removal presented a close and difficult question that required review of a four-volume evidentiary record, and the Court's decision was informed largely by the posture of the state-court discovery rulings. In addition, like all defendants, Wal-Mart had to act out of an abundance of caution upon receipt of any "new paper" that it believed may trigger its thirty-day removal clock. *See* 28 U.S.C. § 1446(b). Although the Court gave little weight to Super H's statement in the motion to compel due to other statements in the record, such statement provided Wal-Mart with a new ground for removal that was not present in the Offer Letter. Accordingly, the award of fees is not appropriate. *See Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1114 (D. Colo. 2000) (noting that though fee awards are within the district court's discretion, a general standard has emerged wherein motions for fees are typically denied where there was a colorable basis for removal). The Court therefore does not find fees appropriate in this matter.

IT IS THEREFORE ORDERED that Super Hs' Motion to Remand (Doc. No. 24) is GRANTED. The Clerk of the Court is ordered to remand this matter to the District Court of Osage County, Oklahoma.

**ORDERED THIS 26th DAY OF FEBRUARY, 2007.**

*/s/ Terence Kern*
_____
TERENCE KERN
United States District Judge